UNITED STATES of America, Plaintiff,

v.

**Alex J. RAINERI, Defendant.**

No. 80–CR–29.

United States District Court,
W. D. Wisconsin.

Oct. 29, 1980.

Frank M. Tuerkheimer, U. S. Atty., Madison, Wis., for plaintiff.

Daniel W. Linehan and Gene D. Linehan, Linehan Law Offices, Madison, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

On October 15, 1980, the Honorable William L. Gansner, United States Magistrate, entered a Report and Recommendation in this case, directed to eight motions to dismiss filed by defendant. Neither party has filed an objection to the report and recommendation although provided with an opportunity to do so.

In the absence of any objections, I consider that I am under no obligation to undertake a review of any portion of the record or of any of the proposed findings or recommendations made by the magistrate. However, I have made such a review to satisfy myself that the findings and recommendations are supported by the record and the law.

At the outset, I express my admiration for the manner in which the magistrate has organized and clarified the defendant's numerous and often overlapping motions. For the purpose of the following discussion, I will adopt the numbering system used by the magistrate in his report and recommendation.

Defendant's motions (2), (3), (4) and (7) are directed to alleged defects in the government's proof which are properly evaluated at trial. As the magistrate observed, any pretrial determination would be wasteful of the time of both the court and the parties. Moreover, such a pretrial determination might have the legal effect of an acquittal of the defendant, thereby barring trial. While such a result would be desirable to defendant, it would be unduly prejudicial to the government, which has its own interest in obtaining a fair trial on the charges against defendant. Defendant's motions (2), (3), (4) and (7) will be denied.

Defendant's motion (6), relating to election by the government of the false statements it will proceed upon at trial, needs no action, since the government has made an

election as requested by defendant. However, so that the record is clear, the motion will be denied.

▮ Defendant's motion (2) requires little comment. In this motion, defendant contends that Count I is duplicitous because it alleges two means of commission of the same illegal act. The magistrate noted, correctly, that such an allegation is not duplicitous, but proper, and that any potential confusion among the jurors may be avoided by careful instructions. This motion will be denied.

▮ Defendant's motion (1) requires only slightly more comment. The United States Attorney is under no obligation to produce exculpatory evidence to the grand jury, except possibly (and I stress *possibly*) that which would clearly and unequivocally negate guilt. In the absence of any showing by defendant that the government was in possession of guilt-negating evidence, I decline to review or to evaluate the evidence which was presented to the grand jury. Defendant's motion (1) will be denied, as will his motion for an evidentiary hearing on the motion.

▮ Finally, I turn to defendant's motion to dismiss (8), on the ground that Count V is legally insufficient to state a crime. It is defendant's position that the indictment is insufficient because it charges him with threatening a witness without alleging that he knew that the person threatened was to be a witness. The law does not require such knowledge on the part of a defendant; *a fortiori* none need be alleged in the indictment. *United States v. De Stefano*, 476 F.2d 324, 328–29 (7th Cir. 1973). This motion will be denied.

### ORDER

IT IS ORDERED that

1. The findings of fact proposed by the United States Magistrate in his Report and Recommendation of October 15, 1980, are adopted as the court's findings of fact.

2. The defendant's motions to dismiss numbered (1) through (8) in the Report and Recommendation are DENIED.

3. The defendant's requests for pretrial evidentiary hearings on his motions to dismiss numbered (1), (2), (3), (4), (5) and (8) are DENIED.

### REPORT AND RECOMMENDATION

WILLIAM L. GANSNER, Magistrate.

### INTRODUCTION

This report and recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). It addresses the fourth group of defendant Raineri's pretrial motions, those seeking dismissal of the charges in this case.

On June 6, 1980, a five-count indictment was returned against Alex J. Raineri.

The first three counts, which span a five-week period from August 23 to September 29, 1978, allege that defendant caused the use of a facility in interstate commerce [1] with intent to promote and facilitate the carrying on of a business enterprise involving prostitution (the Show Bar in Hurley, Wisconsin), and that he thereafter performed certain acts to facilitate the prostitution enterprise: Count I—caused a check payable to a prostitute to be taken across the state line; Count II—caused a check paying for electrical power provided to the Show Bar to be taken across the state line; and Count III—caused the delivery and pickup facilities of American Linen Supply to be used between Minnesota and Wisconsin. Counts I, II, and III allege violations of 18 U.S.C. §§ 1952 and 2.

Count IV alleges that defendant committed perjury, in violation of 18 U.S.C. § 1623, when he testified before the Grand Jury on March 18, 1980, and denied having travelled with Cira Gasbarri—the person running the Show Bar—to and from Reno, Nevada, during a three-week period in September and October of 1978.

---

1. Count I charges that defendant caused *both* travel and the use of a facility in interstate commerce.

Count V alleges that on March 19, 1980, defendant endeavored to obstruct justice by arranging for a Grand Jury witness, Patricia Colassaco, to be threatened in connection with her prospective testimony, in violation of 18 U.S.C. § 1503.

The following dismissal motions are before the court:

1. Motion to dismiss the indictment on the ground of the government's failure to present exculpatory evidence to the Grand Jury;

2. Motion to dismiss Counts I, II, and III on the grounds that these counts do not allege a business enterprise within the meaning of 18 U.S.C. § 1952 and that the crimes charged are not within the intended scope of § 1952;

3. Motion to dismiss Counts I, II, and III on the ground that the interstate activity alleged in these counts is insufficient to state an offense;

4. Motion to dismiss Counts I, II, and III on the ground that these counts do not allege the requisite intent;

5. Motion to dismiss Count I or require the government to elect, on the ground that the count is duplicitous;

6. Motion to dismiss Count IV or require the government to elect, on the ground that not all statements alleged in the count are false;

7. Motion to dismiss Count IV on the ground that the alleged false statements are not material; and

8. Motion to dismiss Count V on the ground of insufficiency.

The following motions filed by defendant are not addressed in this report and recommendation, for the reasons stated:

1. Motion to dismiss the indictment on the ground that the court's plan for selection of grand and petit jurors will deny defendant's right to a fair and impartial jury of his peers (motion not yet ripe for decision; see Decision and Order entered October 3, 1980, at 4–6);

2. Motion to dismiss the indictment on grounds of pre-indictment delay (motion withdrawn by defendant; see Defendant's Reply Memorandum, at 6);

3. Motion to dismiss Counts I, II, and III on the ground that no principal has been charged in connection with these counts (motion withdrawn by defendant; see Defendant's Reply Memorandum, at 17).

Such facts as are necessary to a consideration of defendant's motions are incorporated within the appropriate section of the following opinion.

OPINION

1. *The Grand Jury and Exculpatory Evidence*

Defendant has moved to dismiss the indictment in this case on the ground that the indictment was obtained as a result of the government's failure to present the grand jurors with exculpatory evidence.[2] Defendant has further moved for an evidentiary hearing on his motion at which, he claims, "he will be able to present witnesses who will demonstrate that a principal Government witness or witnesses against the Defendant in this action harbor extremely ill feelings against the Defendant and suffer from severe mental disorders." (Defendant's Memorandum In Support of Motions, at 35). Although defendant's argument refers to "witnesses," it is clear from both other arguments in his brief and from counsel's affidavit in support of the motion that he is referring to only one witness—Cira Gasbarri. It is defendant's contention that the government was obliged to inform the grand jury that Ms. Gasbarri "was in a mental state which would reflect upon her competency to testify." (Defendant's Motion to Dismiss–8, at 1).

The government has demonstrated by affidavit that Ms. Gasbarri's testimony before the Grand Jury played a substantial part in the ultimate indictment in this case. (Affidavit of Frank M. Tuerkheimer, filed July

---

2. This motion has been identified by defendant as "Defendant's Motion to Dismiss–8."

18, 1980, at paragraphs 7–17). The government has also conceded, in essence, that evidence bearing upon Ms. Gasbarri's mental state *per se* was not presented to the Grand Jury. The government argues, however, that it was not legally obliged to present such evidence and that Ms. Gasbarri's testimony was corroborated by testimony from a number of other witnesses.

Upon review of counsel's affidavits and arguments, I am persuaded that no evidentiary hearing on the alleged exculpatory evidence as to Ms. Gasbarri's mental state or competency is necessary, and that defendant's motion to dismiss the indictment because of the government's failure to present such evidence to the Grand Jury should be denied.

The parties apparently agree that the government generally is under no obligation to present a Grand Jury with *all* of the potentially exculpatory evidence in its possession. The parties also apparently agree that the government's obligation in this regard extends only to the presentation of evidence that "clearly would have negated guilt." *United States v. Mandel,* 415 F.Supp. 1033, 1042 (D.Md.1976); *Accord, United States v. Narciso,* 446 F.Supp. 252, 296–297 (E.D.Mich.1977). I, too, agree with these statements of applicable legal standards. I further note my particular agreement with the court's statement in *Mandel* that the imposition of a broader requirement that the government present a Grand Jury with "*all* information that might be exculpatory" would place the courts in the risky position "of interfering too much with the Grand Jury process and [doing] so on the basis of guessing what evidence a Grand Jury might have found persuasive." *Mandel,* 415 F.Supp. at 1040 and 1042 (original emphasis).

■ Applying these standards to the present case, it is clear to me, first, that no evidentiary hearing need be conducted on defendant's motion. The defendant has neither alleged nor suggested that it could be demonstrated at such a hearing that any clearly exculpatory evidence in negation of defendant's guilt was either possessed by the government or withheld from the Grand Jury that returned the indictment in this case. Evidence that may have "reflected upon" Ms. Gasbarri's competence to testify before the Grand Jury—as opposed to evidence that her testimony was totally unbelievable or even that she was incompetent to testify—is not of a clearly exculpatory character; neither is evidence that Ms. Gasbarri or other unnamed witnesses may have harbored bad feelings against the defendant. Both types of evidence that defendant desires to elicit at an evidentiary hearing would, in my view, go only to the question of the credibility of the Grand Jury testimony of those persons, an issue which the Grand Jury was presumably best able to assess and an issue which, in any event, would hardly appear to require scrutiny by the court at an evidentiary hearing.

■ Moreover, it is my opinion that a federal prosecutor is under no obligation to present a Grand Jury with evidence that might merely serve to impeach the credibility of its witnesses. The purpose of a Grand Jury is not to determine guilt or innocence, but rather to determine whether probable cause exists to believe a crime has been committed. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). Accordingly, the Seventh Circuit has held that "the Government on its own need not provide [a Grand Jury with] evidence that undermines the credibility of its witnesses." *United States v. Gardner,* 516 F.2d 334, 338–339 (7th Cir.), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975).

Finally, on the basis of the United States Attorney's uncontested affidavit summarizing the evidence laid before the Grand Jury in this case (Tuerkheimer affidavit, filed July 18, 1980, at paragraphs 7–17), I find that the grand jurors were presented with substantial lay and expert testimony and documentary evidence corroborating Cira Gasbarri's testimony in material respects. I further find, on the basis of the same uncontested affidavit (*Id.,* at paragraphs 18–23), that the government in fact provided the grand jurors with potentially exculpato-

ry evidence tending to contradict or impeach the testimony of several government witnesses, including Gasbarri. Among the potentially exculpatory evidence presented to the grand jurors was the testimony of defendant himself, who denied any involvement in the prostitution activities at the Show Bar and specifically assailed the credibility of Gasbarri.

On the basis of these factual showings and the authorities cited above, it is my opinion that the government in this case met or exceeded its legal obligation to present potentially exculpatory evidence to the Grand Jury, and that the evidence bearing upon Gasbarri's mental state—and therefore her credibility—that was not presented to the grand jurors would not clearly have negated defendant's guilt. It will be my recommendation to the court that defendant's motion for an evidentiary hearing, as well as his motion to dismiss the indictment in this respect, be denied.

### 2. Business Enterprise Allegations in Counts I, II, and III

Defendant has moved for dismissal of Counts I, II, and III of the indictment on the grounds that: 1) the activities alleged do not relate to a "business enterprise" within the meaning of 18 U.S.C. § 1952; and 2) the attempted application of § 1952 to this case exceeds the intended scope of the statute.[3] Defendant has also requested an evidentiary hearing on the motion at which to demonstrate: 1) that any unlawful activities occurring at the Show Bar were not of a continuing nature and did not, therefore, constitute a business enterprise; and 2) that his own involvement in such activities was "sporadic" and not "continuous."

 To the extent that defendant's motion attacks the legal sufficiency of Counts I, II, and III, as it was apparently intended to do,[4] the motion is without mer-

it. Rule 7(c)(1), F.R.Cr.P., requires that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged." To satisfy the test of sufficiency, an indictment must fairly inform the defendant of the charges against which he must defend and be precise enough to provide protection against future jeopardy. *United States v. Ray*, 514 F.2d 418, 422 (7th Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975). As long as the words of the statute involved clearly set forth all of an offense's constituent elements, it is generally sufficient that an indictment be stated in the words of the statute itself. *Hamling v. United States*, 418 U.S. 87, 117–118, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974). Counts I, II, and III of the present indictment satisfy these principles. Tracking the words of the statute, while including additional factual detail, these counts contain sufficient allegations of violations of § 1952. *See United States v. Levine*, 457 F.2d 1186, 1189 (10th Cir. 1972) (holding that indictment charging violation of § 1952 in words "substantially" following the statute [see indictment at 1185, n. 1] was sufficient). In particular, each count alleges that defendant's specified activities were performed "with intent to promote and facilitate the carrying on of *a business enterprise* involving prostitution in violation of Sections 944.30 and 944.34 of the Wisconsin Statutes, *an unlawful activity*, in connection with . . . the Show Bar . . . ." (emphasis added). As defined in § 1952, an "unlawful activity" includes "any business enterprise involving . . . prostitution offenses in violation of the laws of the state in which they are committed." 18 U.S.C. § 1952(b)(1). Counts I, II, and III contain sufficient allegations of the requisite element of an "unlawful activity."

 Defendant further challenges the first three counts of the indictment on the

---

**3.** This motion is presented in Defendant's Motion to Dismiss–1" and Defendant's Amended Motion to Dismiss–1."

**4.** At p. 13 of his supporting memorandum, defendant argues: "[t]he face of this Indictment

in this action does not contain any information to indicate that the alleged unlawful business enterprise was a continuing course of conduct. . . ."

ground that the application of the statute to the facts of this case exceeds the intended purview of § 1952. He argues, specifically, that the acts charged against him "represent sporadic casual involvement in a proscribed activity rather than any continuous course of criminal conduct," and that § 1952 was not intended to encompass such minor involvement in an unlawful activity. (Defendant's Memorandum in Support of Motions, at 14 and 17). There are two related reasons why I find these arguments unpersuasive, one primarily factual and one almost exclusively legal.

First, though defendant regards his alleged involvement in prostitution activities at the Show Bar as merely "sporadic [and] casual," it is clear that the government does not. A mere reading of the indictment's first three counts is sufficient to demonstrate the government's—and the Grand Jury's—belief that during a period from August 23 to September 29, 1978, defendant was engaged in acts in promotion of a prostitution business at the Show Bar, acts that might be fairly regarded as a continuing course of conduct. Moreover, as the government has shown by affidavit, it is the government's intent at trial to demonstrate that defendant was "deeply involved in the running of the Show Bar business," that he helped get dancers for the bar, did most of its book work, "collected the prostitution proceeds," generally helped with the business," and shared prostitution proceeds with Cira Gasbarri (Tuerkheimer affidavit filed July 18, 1980, at paragraph 14). To the extent, therefore, that defendant's purported legal challenge to the indictment is predicated upon a characterization of his involvement in prostitution activities that is at variance with the government's intended trial evidence, his challenge is one to be decided at trial after the conflicting testimony is put before the jury. After all, that is what trials are for.

Secondly, there is strong legal justification for concluding that the type of extensive involvement in the business of prostitution that the government intends to prove in this case is precisely the type of activity Congress intended to reach through § 1952.

While "§ 1952 was aimed primarily at organized crime and, more specifically, at persons who reside in one state while operating or managing illegal activities located in another," *Rewis v. United States*, 401 U.S. 808, 811, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), the language of the statute does not limit its reach to such exclusive circumstances. *Erlenbaugh v. United States*, 409 U.S. 239, 247, 93 S.Ct. 477, 482, 34 L.Ed.2d 446 (1972). As one court has held in rejecting the contention that § 1952 was limited in application to syndicate racketeering:

> On the contrary, as we read the legislative record, Congress meant exactly what the language of section 1952 states—it deliberately chose to make the statute applicable generally, and without any crippling restrictions, to any person engaged in any kind of illicit business enterprise in one of the four fields of activity specified in the statute . . . .

*United States v. Roselli*, 432 F.2d 879, 885 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). The targeted offense of § 1952 is "unlawful activity" facilitated or promoted by travel or the use of a facility in interstate commerce. Where the "unlawful activity," the underlying offense, involves gambling, alcohol, narcotics, controlled substances, or prostitution, "the Government must prove more than an isolated incident; it must prove a business enterprise." *United States v. Wander*, 601 F.2d 1251, 1257 (3d Cir. 1979). Such a business enterprise has been alleged by the government in the first three counts of the indictment in the present case.

Moreover, under the provisions pertinent to the present case, the targeted offender of § 1952 is one who travels or uses interstate commerce facilities "with intent to . . . facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." As used in the statute, "facilitate" means " 'to make easy or less difficult.' " *United States v. Miller*, 379 F.2d 483, 486 (7th Cir.), *cert. denied*, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967) (quoting from *United States v. Barrow*, 212 F.Supp. 837, 840 (E.D.Pa.1962)). While

common sense would dictate that a person whose contact with the "unlawful activity" was purely incidental and insignificant (for instance, a milkman making interstate deliveries to a gambling house) would not fall within the statute's ambit, it appears equally clear that a person who travels or uses a facility in interstate commerce with the requisite intent and the subsequent participation in the "unlawful activity" lies directly in the statute's path. Defendant is alleged in the indictment in the present case to be such an individual.

As a final matter, I note that the only court to have explicitly considered the matter has held that the "continuous course of conduct" referred to in the legislative history of § 1952[5]—and relied upon by defendant—"refers to the nature of the business promoted or facilitated—and not to the essence of the federal offense, which is 'travel' [or use of any facility in interstate commerce]." *United States v. Teemer*, 214 F.Supp. 952, 958 (N.D.W.Va.1963).

For all of these reasons, it is my view that Counts I, II, and III contain sufficient allegations of a "business enterprise" within the meaning of § 1952, and that the application of the statute to the alleged facts of this case is fully consonant with Congress' intent in enacting § 1952. It will be my recommendation that defendant's motion to dismiss the first three counts in these respects be denied.

██ It will be my further recommendation that defendant's request for an evidentiary hearing in support of his dismissal motion also be denied. The proper time and place for defendant to attempt to produce evidence showing that the Show Bar

was not a business enterprise involving prostitution and that his own involvement with any unlawful activities at that establishment were "sporadic" is at trial and before a jury. "A motion to dismiss is not the proper way to raise a [factual] defense." *United States v. Snyder*, 428 F.2d 520 (9th Cir.), *cert. denied*, 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970).

### 3. Interstate Activity Allegations in Counts I, II, and III

Defendant has moved for dismissal of Counts I, II, and III on the grounds that the interstate activity alleged in each of these counts of violation of § 1952 was merely incidental and that, therefore, the counts fail to allege a sufficient basis for federal jurisdiction. Defendant has also requested an evidentiary hearing to prove his contention.[6]

Defendant relies upon three Seventh Circuit decisions in which § 1952 counts were dismissed for insufficient factual showing of a nexus between the jurisdictional element (travel or use of facility in interstate commerce) and the state crime (the "unlawful activity" under § 1952); *United States v. Isaacs*, 493 F.2d 1124 (7th Cir. 1973), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *United States v. McCormick*, 442 F.2d 316 (7th Cir. 1971); and *United States v. Altobella*, 442 F.2d 310 (7th Cir. 1971). Defendant also relies upon the legal test stated in a prior decision of this court, *United States v. Vitich*, 357 F.Supp. 102 (W.D. of Wis.1973), in which Judge James E. Doyle upheld a § 1952 indictment strikingly similar to the charges in the present case.[7]

---

5. The language of defendant's arguments is drawn from comments by Attorney General Robert F. Kennedy before the Senate committee considering approval of § 1952 in 1961. Kennedy's remarks, as quoted in *Rewis v. United States*, 401 U.S. 808, 811–812, n. 6, 91 S.Ct. 1056, 1059, n. 6, 28 L.Ed.2d 493 (1971), included the following:

> The travel that would be banned is travel "in furtherance of a business enterprise" which involves gambling, liquor, narcotics, and prostitution offenses or extortion or bribery. Obviously, we are not trying to curtail the

sporadic, casual involvement in these offenses, but rather a continuous course of conduct sufficient for it to be termed a business enterprise.

6. The motion and request for evidentiary hearing are presented in "Defendant's Motion to Dismiss-7."

7. A side-by-side comparison of the *Vitich* indictment and a representative charge in the present case (Count III) is helpfully presented at p. 35A of the government's Memorandum of Law in opposition to defendant's motion.

The government argues in opposition that the Seventh Circuit has more recently embraced a broader construction of § 1952 than that presented in the earlier decisions relied upon by defendant. The government argues that the broader construction is reflected in *United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979); *United States v. Bursten*, 560 F.2d 779 (7th Cir. 1977); *United States v. Peskin*, 527 F.2d 71 (7th Cir. 1975); and *United States v. Rauhoff*, 525 F.2d 1170 (7th Cir. 1975).

While conceding that its cases, as well as those advanced by defendant, have a bearing on this case, it is the government's principal contention that defendant's motion is premature; *i. e.*, that a determination of "the nature and degree of interstate activity in furtherance of a state crime," *Isaacs*, 493 F.2d at 1148, can not be made from the face of an indictment, and must await a full evidentiary presentation at trial. Defendant counters with the argument that his requested evidentiary hearing is designed to substitute for the trial and to permit a pretrial determination of the issue. I am persuaded that the government's position is more correct and that a pretrial determination of defendant's motion should not be conducted.

The very cases relied upon by defendant support the conclusion that the sufficiency of an indictment's allegation of nexus between the jurisdictional element and the underlying offense in a § 1952 prosecution is best determined upon the basis of evidence presented at trial. In *Isaacs, McCormick*, and *Altobella*, the Seventh Circuit ordered dismissal of § 1952 charges *after* conducting a thorough review of the trial evidence in each case. In *United States v. Vitich*, this court upheld a § 1952 indictment on a pretrial dismissal motion, but the court's review of the matter was the functional equivalent of a review of the suffi-

ciency of the government's trial evidence. The parties in *Vitich* entered into a lengthy stipulation of facts that the government would prove at trial, and stipulated further "that the court may consider the motion to dismiss as if it were a motion for judgment of acquittal filed during the trial at the close of the government's case." 357 F.Supp. at 103. In considering the *Vitich* "motion for judgment of acquittal," *Id.* at 105, Judge Doyle assessed the stipulated "trial evidence" according to the following test:

> From these decisions [*Altobella* and *McCormick*] it appears that there are two predominant factors bearing on the question whether the interstate activities of an unlawful operation bring it within the ambit of the Travel Act: (1) the significance of the role of the interstate activity in the unlawful operation; (2) whether the use of interstate facilities was a matter of happenstance or a conscious decision on the part of the defendant.

*Id.* at 104. It is impossible to imagine such a test being fairly and properly applied to a factual array less complete than could be presented at a trial, or at the very least, on a thorough stipulation of evidence as in *Vitich*. The parties to the present case have not agreed to such a stipulated set of facts.[8]

Under the circumstances of this case, I cannot accept defendant's contention that his requested evidentiary hearing would provide an adequate pretrial substitute for the expected evidentiary presentation at trial. If the evidentiary hearing were to provide a sufficient factual basis for court determination of the issue at hand, the hearing would have to be a virtual simulation of the actual trial on Counts I, II, and III. If at the close of the hearing defendant's motion were to be denied, the govern-

---

8. In an affidavit filed with the court on August 1, 1980, the prosecutor in the present case stated that the parties in *Vitich* had entered a further agreement: that if the dismissal motion in that case were denied, the defendant would plead guilty to the § 1952 charge. The prosecutor's affidavit further stated that Vitich pled

guilty pursuant to the agreement after Judge Doyle denied the motion. Finally, the prosecutor stated that a comparable offer has not been made by the defendant in this case. (Tuerkheimer affidavit filed August 1, 1980, at paragraph 2).

ment and the defendant would be put to the additional expense and effort of "retrying" these counts before the jury at trial. If defendant's motion were to be granted after a pretrial evidentiary hearing, a trial would still be conducted on the remaining two counts of the indictment. For reasons explained in my earlier decision and order denying defendant's motion for severance of the various counts, a trial on Counts IV and V would likely involve the introduction of extensive evidence bearing upon the acts alleged in the first three counts. Thus, it appears to me that a pretrial evidentiary hearing would result in unnecessary and expensive duplication of efforts.

Defendant's motion also seeks dismissal of Counts I, II, and III on the ground that the indictment fails to specify the conduct he allegedly engaged in and the connection between him and the alleged use of interstate facilities. It is my view that the indictment is clear and detailed enough to withstand this sufficiency attack. *See United States v. Cerone*, 452 F.2d 274, 290 (7th Cir. 1971). The evidentiary detail missing from the indictment is more properly the subject of a bill of particulars. A motion for bill of particulars in these respects was filed by defendant in this case, and was largely consented to by the government. I have no reason to believe that the detail sought by defendant has not been provided in this manner, if not by earlier discovery.

For these reasons, it will be my recommendation that defendant's motion to dismiss Counts I, II, and III in these respects, as well as his request for an evidentiary hearing on the motion, be denied. Defendant's attack upon the sufficiency of the jurisdictional element in these counts can be renewed at the appropriate time during trial. I intimate no view on the merits of the motion, if renewed.

### 4. *Allegation of Intent in Counts I, II, and III*

Defendant has moved for dismissal of Counts I, II, and III on the ground that

both the indictment and the information presented to the Grand Jury "did not indicate that the defendant used an interstate facility with the requisite intent required for a charge" under § 1952. Defendant has also requested an evidentiary hearing at which to demonstrate that any use by him of an interstate facility "occurred without the requisite intent to promote a business enterprise" as required by the statute.[9]

■ Defendant's attack on the sufficiency of the indictment's allegations of intent in Counts I, II, and III is frivolous. Each of these counts alleges that defendant caused the use of an interstate commerce facility "with intent to promote and facilitate the carrying on of a business enterprise involving prostitution." Such allegations are an explicit statement of the requisite intent required under the statute. *See United States v. Miller*, 379 F.2d 483, 486 (7th Cir. 1967). The indictment's allegations of intent are clearly sufficient.

Defendant's request for a pretrial evidentiary hearing is equally misguided. Defendant will have an ample opportunity at trial to introduce evidence that may demonstrate that he did not use interstate facilities with the intent to promote a prostitution business.

It will be my recommendation that defendant's motion to dismiss Counts I, II, and III in this respect, as well as his request for an evidentiary hearing on the motion, be denied.

### 5. *Alleged Duplicity of Count I*

Defendant has moved, alternatively, for an order dismissing Count I of the indictment or an order requiring the government to elect what its proof will be under this count.[10] The ground of the motion is the asserted duplicitousness of Count I, which charges—conjunctively—that defendant "did cause travel *and* the use of a facility in interstate commerce . . . in that he caused a . . . payroll check, written in Hurley, Wis-

---

9. "Defendant's Motion to Dismiss–10."

10. "Defendant's Motion to Dismiss–2."

consin, drawn on [a Michigan bank], payable to ... a prostitute employed [at] the Show Bar ... to be taken to the drawee bank in [Michigan] .... " (emphasis added).

The government argues in opposition that Count I is an entirely permissible instance of conjunctive pleading that requires neither dismissal or election.

The jurisdictional component of § 1952 is phrased in the disjunctive; it prohibits either travel in interstate commerce *or* use of a facility in interstate commerce. § 1952(a). These are "alternative means for the commission of the crime." *United States v. Anderson*, 368 F.Supp. 1253, 1260 (D.Md.1973). Rule 7(c)(1), F.R.Cr.P., permits allegations in a single count that a defendant committed an offense "by one or more specified means."

█ Duplicity is best defined as "the joining in a single count of two or more distinct and separate offenses." Wright, *Federal Practice and Procedure: Criminal* § 142, at p. 306. The relevant question, therefore, is whether Count I of the indictment charges a single offense or distinct and separate offenses. I believe the answer is obvious: Count I, based upon § 1952, charges a single offense that can be committed by two means. Accordingly, "the charge can be laid in a single count, and indeed the use of several counts would involve multiplicity [the charging of a single offense in several counts]." *Id.* at p. 307–309.

This analysis is completely consistent with reported decisions upholding the conjunctive pleading of a violation of § 1952. See *United States v. Amick*, 439 F.2d 351, 358–359 (7th Cir.) *cert. denied*, 404 U.S. 823, 92 S.Ct. 47, 30 L.Ed.2d 51 (1971); *Turf Center, Inc. v. United States*, 325 F.2d 793, 796–797 (9th Cir. 1964). Moreover, in *Turf Center* the court stated:

[I]t is recognized that charging in one count the doing of the prohibited act in each of the prohibited modes redounds to the benefit of the accused. A judgment on a verdict of guilty upon that count will be a bar to any further prosecution in respect to any embraced by it. *Crain v. United States*, 162 U.S. 625, 636 [16 S.Ct. 952, 955, 40 L.Ed. 1097] (1896).

352 F.2d at 796–797. *See also Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

In light of my conclusion that Count I is not duplicitous, it is my view that neither dismissal nor government election of the mode of proof is required. Defendant's concern that the submission of the conjunctive charge to the jury may lead to a less than unanimous verdict of guilty (with some jurors finding travel, others finding use of an interstate facility, but all finding one or the other) is one that can be dealt with adequately by appropriate jury instructions, if such are believed necessary.

It will be my recommendation that defendant's motion to dismiss Count I or, in the alternative, to require the government to elect between the alternative jurisdictional allegations, be denied.

### 6. *Election or Dismissal of Count IV*

Defendant has moved, alternatively, for either an order dismissing the perjury count of the indictment (Count IV) or an order requiring the government to elect as to which of the allegedly false statements recited in the indictment it will proceed upon at trial.[11] In its brief in opposition to defendant's motions, the government consented to the election motion. The government has now apparently specified for the defendant the allegedly false statements it intends to prove at trial, and defendant's reply memorandum indicates that defendant is satisfied with the government's decision. If not specifically withdrawn by defendant, it is nonetheless clear that there is no reason to grant defendant's motion. Accordingly, it will be my recommendation that defendant's motion for dismissal of Count IV, or for government election of proof, be denied.

11. "Defendant's Motion to Dismiss–11."

### 7. Alleged Immateriality of False Statements Charged in Count IV

Defendant has moved for dismissal of the perjury count in the indictment, Count IV, on the ground that the allegedly false statements recited therein were not material to the investigation being conducted by the Grand Jury at the time of his testimony before it.[12] An evidentiary hearing is also requested. Defendant specifically contends that it was not material to the Grand Jury's investigation whether or not he traveled with and was accompanied by Cira Gasbarri during a trip to Reno, Nevada, in September and October of 1978.

■ The materiality of an allegedly false declaration is, of course, a required element of a perjury charge under 18 U.S.C. § 1623. Count IV of the indictment contains a well-pled allegation of the materiality of the charged false statements in this case,[13] and there can be no doubt that the count is immune from attack on pleading sufficiency grounds. *See United States v. Rook*, 424 F.2d 403, 405 (7th Cir. 1970).

■ Beyond this, however, defendant argues that the court should determine in advance of trial that his allegedly false statements to the Grand Jury did not constitute a crime because, as a matter of law, they were not material to the Grand Jury's investigation. Defendant contends that this issue is appropriate for pretrial examination because materiality under § 1623 is a question of law.

The dependent clause of the last sentence is a correct statement of the law, *see, e. g., Sinclair v. United States*, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929); *United States v. Giacalone*, 587 F.2d 5 (6th Cir.

1978), but it does not follow from recognition of this well-settled principle that a court ought normally decide the question in advance of trial.

The "formulation of materiality" in this circuit is as follows:

> [F]alse testimony before the grand jury is material if it "has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." Merely potential interference with a line of inquiry is sufficient to establish materiality, regardless of whether the perjured testimony actually serves to impede the investigation.

*United States v. Howard*, 560 F.2d 281, 284 (7th Cir. 1977).

■ It is my view that a determination of the materiality of defendant's alleged false testimony under the *Howard* test can most appropriately be made at trial, where the trial judge can assess the matter on the basis of all evidence bearing upon materiality, including evidence relevant to other counts of the indictment. I note that defendant has argued on the merits that his conceded acquaintance and connection with Cira Gasbarri was the only fact material to the Grand Jury's investigation. I note also the government's opposing argument that the nature of their connection was of critical and material interest to the Grand Jury. I intimate no view on the merits of these arguments, leaving the issue for resolution at trial.

From my position on pretrial determination of the materiality issue, it logically follows that defendant's request for an evidentiary hearing on the motion should be

---

**12.** "Defendant's Motion to Dismiss–6."

**13.** Count IV, paragraph 2, specifically alleges that the Grand Jury, on the date of defendant's testimony, was "conducting an investigation into possible violations of [federal law] in connection with prostitution activities and those involved with such activities centering around the Show Bar in Hurley, Wisconsin, during the period including 1977 to 1979." Paragraph 3 further alleges that it "was material to said investigation to ascertain what connection, if any, existed between [defendant] . . . and Cira

Gasbarri, the person in overall charge of the Show Bar . . . [and that] it was material to ascertain whether [defendant] in attending a judicial function in Reno, Nevada in September and October, 1978, travelled with and was accompanied by Cira Gasbarri." After reciting a portion of defendant's testimony in paragraph 4 (in which defendant stated that he had met Gasbarri in Reno but had not travelled with her either to Reno or back to Hurley), paragraph 5 alleges that defendant's declarations were false and "material to the investigation."

denied. Moreover, for the same reasons I expressed earlier in rejecting defendant's request for an evidentiary hearing on the sufficiency of the jurisdictional showing in Counts I, II, and III, I believe that an evidentiary hearing on the present motion would not be a wise use of judicial and legal resources.

It will be my recommendation that defendant's motion to dismiss Count IV of the indictment, as well as his request for an evidentiary hearing on the motion, be denied.

### 8. *Alleged Insufficiency of Count V*

The final motion to be considered in this report and recommendation is defendant's motion to dismiss the obstruction count of the indictment, Count V, on the following asserted grounds of legal insufficiency: 1) because the indictment fails to allege that defendant was aware that Patricia Colassaco was to be a witness before the Grand Jury; and 2) because defendant is charged as a principal while the count charges only that he arranged for Colassaco to be threatened.[14]

Count V alleges that on March 19, 1980, defendant "by threat and threatening communication, endeavored to influence, obstruct and impede the due administration of justice in that he arranged for Patricia Colassaco, a prospective witness in a then-pending Grand Jury investigation . . . to be threatened in connection with her prospective testimony." In an affidavit submitted by the prosecutor in this case, it is stated that at his appearance before the Grand Jury on March 18, 1980, defendant had been asked, among other questions, whether Patricia Colassaco had ever told him that prostitution was occurring at the Show Bar (as Colassaco had previously stated to an F.B.I. agent in December of 1979). Defendant denied that Colassaco had ever made such a statement to him. The affidavit further states that on the next day, March 19, 1980 —according to Patricia Colassaco's brother—defendant asked her brother "to talk to his sister to get her to quit telling lies, keep

quiet and that if she didn't want to listen to her brother, Raineri could get a couple of guys to talk to her to get her to stop telling lies and keep her mouth shut." (Tuerkheimer affidavit filed July 18, 1980, at paragraphs 10–12).

Defendant's argument that Count V is legally insufficient for failure to specifically allege that he was aware of Patricia Colassaco's status as a potential witness is apparently foreclosed in this circuit by the contrary holding in *United States v. De Stefano*, 476 F.2d 324 (7th Cir. 1973). In that case, an indictment for violation of § 1503 by threatening a trial witness contained no specific allegation that the defendant knew the person threatened was to be a witness at a pending trial. *Id.* at 327–328. In finding the indictment legally sufficient, the court expressly rejected the argument that a § 1503 indictment must allege such knowledge or awareness. *Id.* at 328.

Pursuant to *De Stefano*, it is my view that Count V in this case is legally sufficient. There can surely be no substantial claim that the count fails to inform defendant of the nature of the charge against him or provides insufficient protection against future jeopardy.

Moreover, I believe that the absence of an express allegation of defendant's awareness of Colassaco's future witness status does not transform Count V into a statement of a strict liability offense. The indictment's language states that defendant arranged for Colassaco "to be threatened in connection with her prospective testimony." This language provides the requisite *scienter* or *mens rea*. See *De Stefano*, 476 F.2d at 328.

The second prong of defendant's challenge to Count IV is without merit. Defendant contends that in the absence of a charge of violation of 18 U.S.C. § 2, he is unable to determine whether the government intends to proceed against him as a principal, an aider and abettor, or a co-conspirator. His reading of the government's brief in opposition to his motion should have answered his questions.

---

14. "Defendant's Motion to Dismiss—4" and "Defendant's Amended Motion to Dismiss—4."

**30**

As the government correctly argues, it is a crime under § 1503 to "endeavor" to obstruct the administration of justice. The "endeavor" is the completed crime and the appropriate unit of prosecution, for the word " 'describes any effort or essay to accomplish the evil purpose that the section was enacted to prevent.... The section is not directed at success in corrupting a juror but at the 'endeavor' to do so.' " *Osborn v. United States*, 385 U.S. 323, 333, 87 S.Ct. 429, 435, 17 L.Ed.2d 394 (1966) (quoting from *United States v. Russell*, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921)). An arrangement to intimidate or threaten a prospective witness is, therefore, an "endeavor" to obstruct justice. *See United States v. Missler*, 414 F.2d 1293, 1306 (4th Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970). There can be no doubt that Count V contains a legally sufficient statement of defendant's status as a principal for his alleged "endeavor" to obstruct and impede justice, in violation of § 1503.

It will, therefore, be my recommendation that defendant's motion to dismiss Count V be denied.

### RECOMMENDATION

It is respectfully recommended that this court:

1. Adopt as its own the findings of fact incorporated in the opinion above.

2. DENY defendant's motion to dismiss the indictment for failure of the government to present the Grand Jury with exculpatory evidence, and DENY defendant's request for evidentiary hearing on this motion.

3. DENY defendant's motion to dismiss Counts I, II, and III for alleged insufficient allegations of a "business enterprise" within the meaning of 18 U.S.C. § 1952, and DENY defendant's request for evidentiary hearing on this motion.

4. DENY defendant's motion to dismiss Counts I, II, and III for alleged insufficient allegations of interstate activity, and DENY defendant's request for evidentiary hearing on this motion.

5. DENY defendant's motion to dismiss Counts I, II, and III for alleged insufficient allegations of intent, and DENY defendant's request for evidentiary hearing on this motion.

6. DENY defendant's alternative motion for dismissal of Count I or government election of proof on the ground of Count I's alleged duplicitousness.

7. DENY defendant's alternative motion for dismissal of Count IV or government election of proof.

8. DENY defendant's motion for dismissal of Count IV on the ground of the alleged immateriality of defendant's false statements, and DENY defendant's request for evidentiary hearing on this motion.

9. DENY defendant's motion for dismissal of Count V.